UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Lisa Censabella

    v.                                  Civil No. 16-cv-490-AJ
                                        Opinion No. 2017 DNH 181

Town of Weare, et al.[1]


**ORDER AND MEMORANDUM**

The plaintiff, Lisa Censabella, alleges that various employees of the Town of Weare Police Department ("WPD") and members Board of Selectmen ("Board") were complicit in a conspiracy that ultimately resulted in Censabella's termination as a WPD employee. She brings a ten-count complaint alleging various violations of federal and state law. Sheila Savaria, an officer with the WPD, is named as a defendant in seven of those counts: Counts I, IV, V, VI, VIII, IX, and X. Savaria moves to dismiss each count pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Censabella has failed to state a claim against her upon which relief may be granted. Doc. no. 12. Censabella objects, subject to one limited exception. Doc.

---

[1] The Town of Weare, Sean Kelly, Frank Hebert, Kimberly McSweeney, Brandon Montplaisir, Kenneth Cox, Shelia Savaria, Naomi Bolton, Thomas Clow, Keith Lacasse, James Leary, Jennifer Bohl, and Frederick W. Hippler. The individual defendants have all been sued in both their official and personal capacities.

no. 19.  For the reasons that follow, Savaria's motion is granted as to all counts except Count X.

**Standard of Review**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations . . . set forth a plausible claim upon which relief may be granted."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation and quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense."  Id. at 679.

**Background**

The facts recited in this section are drawn from Censabella's complaint and certain documents attached to Savaria's motion to dismiss.[2]  When viewed in the light most

---

[2]  These documents are: (1) a letter, signed by Censabella, entitled "Personnel Entry, Order of Suspension and Conditions of

favorable to Censabella, the relevant facts are as follows.[3]

Censabella was a police officer with the WPD.  She was hired by the WPD as a part-time officer in August 2009, transitioning to full time in August 2010.  Beginning in late-February 2013, Kenneth Cox, then a sergeant with the WPD, and Kimberly McSweeney, then the WPD's union steward, separately approached Censabella and requested that she draft a statement of misconduct against then-WPD lieutenant James Carney.  Carney had previously been Censabella's supervisor.  Censabella stated that she had not observed any misconduct by Carney and refused both requests.  Soon after these conversations, Carney was placed on administrative leave, and the Town of Weare ("Town") issued a "no contact" order prohibiting any WPD officer from communicating with Carney.  Carney ultimately left the WPD on or

---

Continued Employment" (doc. no. 12-2); (2) a memorandum Savaria wrote regarding an investigation of a traffic incident (doc. no. 12-3); and (3) a redacted version of a charge of discrimination Censabella filed with the New Hampshire Commission for Human Rights (doc. no. 12-4).  Censabella contends that the court may not consider these documents without converting Savaria's motion into one for summary judgment.  The court disagrees, as each of these documents is explicitly referenced in Censabella's complaint and is central to one or more of her claims for relief.  See Brennan v. Zafgen, Inc., 853 F.3d 606, 610 (1st Cir. 2017) (original bracketing omitted) (citation omitted).

[3] Though Censabella's complaint is expansive, her allegations against Savaria are discrete.  The court will focus its recitation of the facts accordingly, providing additional factual context only to the extent necessary.

about July 1, 2013.

Censabella viewed Cox and McSweeney's actions to be part of a conspiracy against Carney. She surmised that Savaria was part of this conspiracy. Over the course of the next several years, members of this conspiracy targeted Censabella due to the perception that she remained close to and was communicating with Carney. At one point, Cox informed Censabella that Savaria, among others, believed that Censabella was "leaking" information to Carney. On another occasion, Carney approached Censabella at a bar and Censabella started crying uncontrollably, telling Carney that she could not speak with him because she had "become the target" of several WPD officers, including Savaria, for not filing a false report against Carney. The behavior of the members of the conspiracy caused Censabella emotional and psychological distress.

On December 29, 2014, Censabella was placed on administrative leave. The Board held a hearing the following week, after which Censabella was suspended for thirty days and required to sign a "second chance agreement." See doc. no. 12-2. Censabella attributes this series of events to the conspiracy against her.

Following her suspension, Censabella took a medical leave of absence for hip replacement surgery. When she returned to work in May 2015, several WPD officers, including Savaria,

4

orchestrated "an onslaught of false allegations, untrue statements, and . . . internal affairs investigations" against her. Doc. no. 1-1 ¶ 121. As a result of these actions, Censabella was again placed on administrative leave.[4] Censabella requested a hearing before the Board and, in September 2015, filed charges of discrimination against several WPD officers, including Savaria, with the New Hampshire Commission for Human Rights ("NHCHR") and the United States Equal Employment Opportunity Commission ("EEOC"). See doc. no. 12-4.

The Board held a hearing on October 5, 2015. At this hearing, Sean Kelly, then chief of the WPD, recommended that Censabella be terminated. Kelly based this recommendation in part upon a finding that Censabella had gone to the hospital to arrest the driver of a motor vehicle involved in a collision without proper authorization to make the arrest. Though Censabella recalls McSweeney ordering her to make the arrest while they were both at the scene of the collision, McSweeney later prepared a written statement claiming that no such order

---

[4] In her complaint, Censabella initially states that she was placed on "paid administrative leave" on August 5, 2015. See doc. no. 1-1 ¶ 122. Two paragraphs later, she states that she was on "unpaid administrative leave" as of August 10, 2015. Id. ¶ 124. She does not explain how her leave shifted from "paid" to "unpaid" in a matter of five days. For the purposes of this order, the court will assume that the initial reference to "paid" leave is a typographical error, and that Censabella was in fact placed on unpaid leave as of August 5, 2015.

5

had been made.  Savaria was also at the scene, but not within earshot of Censabella and McSweeney.  Savaria nevertheless prepared a memorandum stating that she observed McSweeney "ask[] Officer Censabella to meet Weare Rescue at the Concord Hospital to investigate further, and make an arrest if she felt she had probable cause to do so" but that "[a]t no point did [Savaria] hear Sergeant McSweeney tell Officer Censabella to go to the hospital specifically to arrest [the driver]." Doc. no. 12-3 (hereinafter the "memorandum").

Censabella's employment with the WPD was terminated following the hearing.  This action followed.

## Discussion

Censabella brings claims against Savaria for: (1) interference with contractual relationships (Count I); (2) civil conspiracy (Count IV); (3) intentional infliction of emotional distress (Count V); (4) negligent infliction of emotional distress (Count VI); (5) violations of substantive and procedural due process and freedom of speech (Count VIII); (6) conspiracy to violate substantive and procedural due process and freedom of speech (Count IX); and (7) aiding and abetting and retaliation in violation of New Hampshire Revised Statutes Annotated ("RSA") § 354-A (Count X).  Savaria moves to dismiss each of these counts for failure to state a claim.  Censabella

6

concedes that she has not stated a claim for negligent infliction of emotional distress, see infra p. 12, but otherwise objects.  The court considers each count in turn.

## I.   Count I: Tortious Interference with Contractual Relations

To succeed on a claim for tortious interference with contractual relations, a plaintiff must demonstrate that "(1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference." City of Keene v. Cleaveland, 167 N.H. 731, 738 (2015) (citation and quotation marks omitted).  When, as here, the plaintiff alleges interference by a fellow employee with her employment contract, "[the] employer may be a third party only if the fellow employee was acting outside of the scope of his employment." O'Neill v. Valley Reg'l Health Care, Inc., No. 00-cv-441-JD, 2001 WL 276968, at *3 (D.N.H. Mar. 21, 2001) (citing, e.g., Preyer v. Dartmouth Coll., 968 F.Supp. 20, 26 (D.N.H. 1997)); see also Balsamo v. Univ. Sys. of N.H., No. 10-cv-500-PB, 2011 WL 4566111, at *5 (D.N.H. Sept. 30, 2011).

Censabella raises three basic categories of allegations against Savaria.  First, she alleges that Savaria was, at least in part, responsible for the "onslaught of false alegations, untrue statements, and . . . internal affairs investigations"

7

brought against Censabella.  Doc. no. 1-1 ¶ 121.  This allegation is insufficient to establish a claim of tortious interference with contractual relations, however, because Censabella has not elaborated upon the nature of the purported allegations, untrue statements, and internal investigations, let alone Savaria's involvement in them.  See Iqbal, 556 U.S. at 679 (noting that "naked assertions devoid of any further factual enhancement" are insufficient to defeat a motion to dismiss (brackets and quotation marks omitted)).

Next, Censabella's suggests that Savaria interfered with Censabella's employment through her statements in the memorandum.  This argument, too, is unavailing because Censabella has failed to allege any facts that would support a reasonable inference was Savaria was operating outside of the scope of here employment with the WPD when she wrote the memorandum.  See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996) ("An act is within the scope of employment under New Hampshire law if it was authorized by the employer or incidental to authorized duties; if it was done within the time and space limits of the employment; and if it was actuated at least in part by a purpose to serve an objective of the employer.").  Indeed, there is every indication here that the opposite was true: the memorandum is written on WPD letterhead and plainly relates to an investigation by the WPD in which

Savaria was an investigating officer.  See doc. no. 12-3.

Finally, Censabella generally contends that Savaria was part of a conspiracy, that Savaria believed Censabella was leaking information to Carney, and that Savaria was "targeting" Censabella.  These arguments do not move the ball, as they are little more than "labels and conclusions" unadorned by the sort of factual backing sufficient to sustain a claim for relief. See Iqbal, 56 U.S. at 678.  Thus, without more, these statements are insufficient to defeat a motion to dismiss.

In sum, Censabella has failed to state a claim against Savaria for tortious interference with contract relations. Savaria's motion to dismiss is granted as to Count I.

## II.  **Count IV: Civil Conspiracy**

The court construes Count IV of Censabella's complaint to allege conspiracy under New Hampshire common law.  In New Hampshire, a civil conspiracy is "a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means."  Sykes v. RBS Citizens, N.A., 2 F. Supp. 3d 128, 138 (D.N.H. 2014) (internal quotation marks omitted) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987)).  A claim for civil conspiracy has the following elements:

> (1) two or more persons (including corporations); (2) an object to be accomplished (i.e. an unlawful object to be achieved by lawful or unlawful means or a lawful object to

9

>     be achieved by unlawful means); (3) an agreement on the
>     object or course of action; (4) one or more unlawful overt
>     acts; and (5) damages as the proximate result thereof.

Id. (internal quotation marks omitted) (quoting Jay Edwards, 130 N.H. at 47).

Censabella alleges, without further elaboration, that she surmised that Savaria was part of the conspiracy, that Savaria "targeted" Censabella, and that Savaria was in part responsible for the "an onslaught of false allegations, untrue statements, and . . . internal affairs investigations" made or brought against Censabella. "Such conclusory statements are not entitled to the assumption of truth," Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (internal quotation marks omitted) (quoting Iqbal, 556 U.S. at 679), and accordingly cannot themselves sustain a civil conspiracy claim against Savaria. Beyond these statements, there are no factual allegations in the complaint supporting a plausible inference that Savaria ever reached an agreement with another member of the WPD or anyone else to achieve some goal (either unlawful itself or achieved though unlawful means) that proximately resulted in damage to Censabella. Censabella has therefore not stated a claim against Savaria in Count IV.

III. **Count V: Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege that a defendant "by

10

extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another." Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (citation omitted). "In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." Id. (citation omitted). "Rather, liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (brackets, quotation marks, and citation omitted).

Censabella has plainly failed to allege any facts in her complaint which, when assumed true, support a plausible inference that Savaria intentionally or recklessly caused Censabella severe emotional distress by engaging in extreme and outrageous conduct. Indeed, there is no allegation against Savaria in her complaint even approaching the sort of extreme and outrageous conduct that, if proven, would allow recovery under an IIED theory. For this reason, Count V is dismissed as brought against Savaria.

## IV. Count VI: Negligent Infliction of Emotional Distress

In her objection, Censabella concedes that her count for

11

negligent infliction of emotional distress "should be dismissed against all defendants." Doc. no. 19 at 6. Savaria's motion is accordingly granted as to this count.[5]

## V.   Count VIII: Due Process and Freedom of Speech

Censabella alleges claims under 42 U.S.C. § 1983 for violations of substantive due process, procedural due process, and freedom of speech.  The court considers each in turn.

### A.   Substantive Due Process

"In order to assert a viable substantive due process claim, a plaintiff has to prove that [she] suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 145 (1st Cir. 2016) (citation and quotation marks omitted).  "The burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." J.R. v. Gloria, 593 F.3d 73, 80 (1st Cir. 2010) (brackets, quotation marks, and citation

---

[5] As this order is limited to Savaria's motion, and Censabella has neither filed a stipulation of dismissal under Rule 41(a)(1)(ii) nor requested that the court enter an order dismissing Count VI as to the remaining defendants under Rule 41(a)(2), the court declines to dismiss this count against the remaining defendants at this time.

omitted).

Here, there is nothing in Censabella's allegations against Savaria that can fairly viewed to "shock the conscience" as that phrase is understood under First Circuit precedent. Cf. Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 624 (1st Cir. 2000) (finding no substantive due process violation as a matter of law when an off duty police officer threatened and harassed the plaintiffs, destroyed their property, and physically pushed the plaintiffs' pregnant daughter, causing her to miscarry). Censabella has therefore failed to plausibly allege a substantive due process violation by Savaria.

B. Procedural Due Process

To state a claim for procedural due process, a plaintiff "must allege facts which, if true, establish that [she] (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law." Miller v. Town of Wenham Massachusetts, 833 F.3d 46, 52 (1st Cir. 2016) (citation omitted). Even assuming that Censabella had a property interest of constitutional magnitude in her employment with the WPD and did not receive adequate process from the WPD and/or the Board, she has nonetheless failed to allege any facts from which the court can infer that Savaria was in any way involved in that deprivation. For instance, there is no suggestion in the complaint that Savaria was Censabella's

supervisor or that she had any direct role in the proceedings that ultimately resulted in Censabella's termination. Censabella has accordingly failed to state a procedural due process claim against Savaria.

    C.    <u>Freedom of Speech</u>

Savaria assumes in her motion to dismiss that Censabella's free speech claim is premised solely upon the "no contact" order imposed by the Town. Though Censabella does not directly refute this in her objection, she does appear to suggest that she was retaliated against for "refusing to say something" – presumably her refusal to file misconduct reports against Carney. The court will therefore consider both the "no contact" order and Censabella's allegation of retaliation.

As with Censabella's procedural due process claim, there are simply no allegations of fact in Censabella's complaint that support a plausible inference that Savaria had anything to do with the "no contact" order. Censabella does not allege, for example, that Savaria had the authority to institute or enforce this order, or indeed how, if at all, Savaria was connected to the "no contact" order in the first place. Censabella therefore cannot sustain a free speech claim against Savaria based on the "no contact" order.

Censabella's retaliation claim is similarly deficient. To succeed on a First Amendment retaliation claim under § 1983, a

plaintiff must establish that:

> (1) [s]he was speaking as a citizen on a matter of public concern; (2) [her] interests, as a citizen, in commenting upon matters of public concern outweighed [her] employer's interest in promoting the efficiency of the public services it performs through its employees; and (3) the protected expression was a substantial or motivating factor in the adverse employment decision.

McGunigle v. City of Quincy, 835 F.3d 192, 202 (1st Cir. 2016) (citation and internal quotation marks omitted).[6]  Even assuming Censabella can generally establish these elements in this case, she has failed to explain how Savaria is liable under this theory, as she has not alleged that Savaria had any authority over Censabella's employment with the WPD.  Thus, Censabella has failed to state a First Amendment retaliation claim against Savaria.

## VI.  Count IX: Civil Rights Conspiracy

A civil rights conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means . . . ." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (citation omitted).  The principal element of such a conspiracy "is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Id. (internal

---

[6] The court assumes for the purposes of this order that these elements equally apply when a plaintiff is retaliated against for refusing to speak.

15

quotations omitted) (citation omitted). To assert a civil rights conspiracy under § 1983, a plaintiff must prove that "there has been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Id. (brackets omitted) (citation omitted).

Censabella has failed to state a civil rights conspiracy claim against Savaria for largely the same reasons she failed to state a claim for civil conspiracy against Savaria under New Hampshire common law: namely, that her assertions that Savaria was part of a conspiracy rest on nothing more than unsupported conclusions. There is, quite simply, nothing in the complaint to support a plausible inference that Savaria ever entered into an agreement with anyone else to inflict some wrong against Censabella. She has therefore failed adequately allege a civil rights conspiracy under § 1983.

**VII. Count X: RSA § 354-A**

Savaria moves to dismiss Censabella's RSA § 354-A claim on the basis that Censabella failed to exhaust her administrative remedies because she did not name Savaria as an individual respondent in her NHCHR charge of discrimination. Censabella does not dispute this contention,[7] but argues that it is not grounds for dismissal this claim.

---

[7] It is plain from the charge of discrimination itself that Savaria is not individually named. See doc. no. 12-4.

Though the New Hampshire Supreme Court has not considered whether the failure to name an individual as a respondent in an administrative complaint bars a later cause of action against that individual under RSA § 354-A, this issue has recently been before at least two other judges in this district. In February 2017, Judge McCafferty concluded, relying on authority interpreting similar charging requirements under Title VII of the Civil Rights Act, that the failure to identify an individual defendant in the charge did not categorically bar a subsequent claim against that defendant under RSA § 354-A. See Carney v. Town of Weare, No. 15-cv-291-LM, 2017 WL 680384 at *7–8 (D.N.H. Feb. 21, 2017). Presented with a similar issue in a motion to remand, Judge Barbadoro recently cited Carney approvingly, concluding that "there is at least a reasonable possibility that the New Hampshire Supreme Court would find [a] claim against [an individual] is not barred by the administrative exhaustion requirement" simply because that individual was not named in the administrative complaint. See Soderman v. Shaw's Supermarkets, Inc., No. 17-cv-076-PB, 2017 WL 3738460, at *3 (D.N.H. Aug. 30, 2017). The court is persuaded by the analysis in both of these decisions, and accordingly declines to dismiss Censabella's RSA § 354-A claim against Savaria on this basis. Savaria's motion

is therefore denied as to Count X.[8]

**Conclusion**

For the foregoing reasons, Savaria's motion to dismiss (doc. no. 12) is granted as to all counts except Count X.

SO ORDERED.

                                              */s/ Andrea K. Johnstone*
                                              Andrea K. Johnstone
                                              United States Magistrate Judge

September 6, 2017

cc:   Wendy L. Spillane, Esq.
      Tony F. Soltani, Esq.
      Daniel P. Schwarz, Esq.
      Brian J. S. Cullen, Esq.

---

[8] In light of this determination, the court need not consider whether certain documents that Censabella attaches to her objection to a related motion to dismiss may be properly considered in the context of a Rule 12(b)(6) analysis. See doc. nos. 18-1 through 18-10.

18