**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Lisa Censabella

    v.                                         Civil No. 16-cv-490-AJ
                                                   Opinion No. 2017 DNH 182
Town of Weare, et al.[1]


**ORDER AND MEMORANDUM**

The plaintiff, Lisa Censabella, alleges that various employees of the Town of Weare Police Department ("WPD") and members Board of Selectmen ("Board") were complicit in a conspiracy that ultimately resulted in Censabella's termination as a WPD employee.  She brings a ten-count complaint alleging various violations of federal and state law.  Brandon Montplaisir, a WPD officer, is named as a defendant in seven of those counts: Counts I, IV, V, VI, VIII, IX, and X.  Montplaisir moves to dismiss each count pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Censabella has failed to state a claim against him upon which relief may be granted.  Doc. no. 13.  Censabella objects, subject to one limited exception.  Doc. no. 18.  For the reasons that follow, Montplaisir's motion is granted in part and denied in part.

---

[1] The Town of Weare, Sean Kelly, Frank Hebert, Kimberly McSweeney, Brandon Montplaisir, Kenneth Cox, Shelia Savaria, Naomi Bolton, Thomas Clow, Keith Lacasse, James Leary, Jennifer Bohl, and Frederick W. Hippler.  The individual defendants have all been sued in both their official and personal capacities.

## Standard of Review

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations . . . set forth a plausible claim upon which relief may be granted."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation and quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense."  Id. at 679.

## Background

Many of the general factual allegations relevant to Censabella's claims against Montplaisir are recited in narrative form in the court's companion order on defendant Shelia Savaria's motion to dismiss.  See Sept. 6, 2017 Order and Memorandum (doc. no. 31).  The court incorporates that narrative herein by reference, and limits its present discussion to a recitation of the specific allegations Censabella makes against

Montplaisir.[2]  These allegations are drawn from Censabella's

complaint and certain documents attached to Montplaisir's motion

to dismiss.[3]  When viewed in the light most favorable to

Censabella, they are as follows:

- Censabella surmised that Montplaisir was part of a
  conspiracy against then-WPD lieutenant James Carney.

- Montplaisir started to "target" Censabella due to the
  perception that she was close to Carney and was "leaking"
  information to him.

- In or around December 2013, Montplaisir told a Police
  Explorer that Censabella was a "shitty cop who did not
  know what she was doing."  Doc. no. 1-1 ¶ 8.  Montplaisir
  later denied making this statement when Censabella
  confronted him about it.

- In summer 2014, then-WPD sergeant Kenneth Cox informed

---

[2] This recitation will accordingly assume familiarity with
the factual narrative in the companion order.

[3] These documents are: (1) a letter, signed by Censabella,
entitled "Personnel Entry, Order of Suspension and Conditions of
Continued Employment" (doc. no. 13-2), and (2) a redacted
version of a charge of discrimination Censabella filed with the
New Hampshire Commission for Human Rights (doc. no. 13-3).
Censabella contends that the court may not consider these
documents without converting Montplaisir's motion into one for
summary judgment.  The court disagrees, as each of these
documents is explicitly referenced in Censabella's complaint and
is central to one or more of her claims for relief.  See Brennan
v. Zafgen, Inc., 853 F.3d 606, 610 (1st Cir. 2017) (original
bracketing omitted) (citation omitted).

Censabella that certain members of the WPD, including Montplaisir, believed that Censabella was leaking information to Carney.

- In January 2015, Montplaisir informed a Weare animal control officer that Censabella had been suspended and would not be returning to the WPD.

- In March 2015, Censabella started crying uncontrollably when approached at a bar by Carney, telling Carney that she could not speak with him because she had "become the target" of several WPD officers, including Montplaisir, for not filing a false report against Carney.

- In early July 2015, several officers, including Montplaisir, read aloud in front of Censabella from a lawsuit that Carney had filed against them in state court. As they read the lawsuit, Montplaisir became increasingly angry and "glared" at Censabella. Montplaisir yelled, "Carney is a piece of shit and anyone who talks to him is a piece of shit." Id. ¶ 115. Later in the day, Censabella started crying when speaking with Cox about the incident. When Censabella arrived at work the following day, someone had placed a box of tissues in her mailbox.

- In late July and early August 2015, several WPD officers, including Montplaisir, orchestrated "an onslaught of

false allegations, untrue statements, and . . . internal affairs investigations" against Censabella. Id. ¶ 121. These actions resulted in Censabella being placed on unpaid administrative leave.

- In September 2015, Censabella filed charges of discrimination against several WPD officers, including Montplaisir, with the New Hampshire Commission for Human Rights ("NHCHR") and the United States Equal Employment Opportunity Commission ("EEOC"). See doc. no. 13-3.

- At the October 5, 2015 hearing before the Board, WPD chief Sean Kelly indicated that he based his recommendation to terminate Censabella's employment in part on a finding that Censabella had failed to issue a "be on the lookout" ("BOLO") broadcast after a road rage incident. Censabella had already located, identified, and interviewed the suspect of this incident, and therefore did not believe the BOLO broadcast was necessary. Montplaisir ignored Censabella and issued the BOLO broadcast anyway. Kelly relied upon Montplaisir's statements regarding this incident in reaching his recommendation of termination.

- After Censabella's employment was terminated, her personal belongings went missing. These belongings were in the possession of Montplaisir and another WPD officer.

An investigation was ultimately sustained in part against

Montplaisir and the other officer for failing to properly

secure Censabella's personal property.[4]


**Discussion**

Censabella brings claims against Montplaisir for: (1)

interference with contractual relationships (Count I); (2) civil

conspiracy (Count IV); (3) intentional infliction of emotional

distress (Count V); (4) negligent infliction of emotional

distress (Count VI); (5) violations of substantive and

procedural due process and freedom of speech (Count VIII); (6)

conspiracy to violate substantive and procedural due process and

freedom of speech (Count IX); and (7) aiding and abetting and

retaliation in violation of New Hampshire Revised Statutes

Annotated ("RSA") § 354-A (Count X).  Montplaisir moves to

dismiss each of these counts for failure to state a claim.

Censabella concedes that she has not stated a claim for

negligent infliction of emotional distress, see infra pp. 11,

---

[4] Censabella makes two additional allegations against
Montplaisir: (1) that another WPD officer filed a sexual
harassment complaint against Montplaisir in early 2013 for
making inappropriate comments about Carney and (2) that the New
Hampshire Attorney General's office expressed "grave concerns"
regarding Montplaisir's credibility following an investigation
into a shooting death in which Montplaisir was involved.  As
neither of these allegations appears to involve Censabella, the
court will not consider them in the context of this order.

but otherwise objects.  The court considers each count in turn.

## I.    Count I: Tortious Interference with Contractual Relations

To succeed on a claim for tortious interference with contractual relations, a plaintiff must demonstrate that "(1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference." City of Keene v. Cleaveland, 167 N.H. 731, 738, 118 A.3d 253, 259 (2015) (citation and quotation marks omitted).  When, as here, the plaintiff alleges interference by a fellow employee with her employment contract, "[the] employer may be a third party only if the fellow employee was acting outside of the scope of his employment." O'Neill v. Valley Reg'l Health Care, Inc., No. 00-cv-441-JD, 2001 WL 276968, at *3 (D.N.H. Mar. 21, 2001) (citing, e.g., Preyer v. Dartmouth Coll., 968 F.Supp. 20, 26 (D.N.H. 1997)); see also Balsamo v. Univ. Sys. of New Hampshire, No. 10-cv-500-PB, 2011 WL 4566111, at *5 (D.N.H. Sept. 30, 2011).

Censabella has failed to state a viable claim against Montplaisir for tortious interference with contractual relations.  The only of Censabella's allegations against Montplaisir approaching this type of claim is her contention that Kelly relied upon Censabella's failure to issue the BOLO broadcast in recommending that Censabella be terminated.  But

7

beyond the assertion that Montplaisir ultimately issued the BOLO
broadcast himself, it is unclear how Montplaisir was otherwise
involved in this incident.  As such, Censbella's contention that
Kelly relied upon Montplaisir's statements regarding this
incident in reaching his recommendation does not support a
plausible inference that in making these statements, Montplaisir
intentionally and improperly interfered with Censabella's
employment.

To the extent Censabella relies upon her more general
allegations that Montplaisir was part of the conspiracy, that he
believed Censabella was leaking information to Carney, and that
he targeted Censabella, this reliance, too, is misplaced.  These
allegations are little more than "labels and conclusions" and
"naked assertions devoid of further factual enhancement" that
are insufficient to defeat a motion to dismiss.  Iqbal, 556 U.S.
at 679 (brackets and quotation marks omitted).

For these reasons, Montplaisir's motion is granted as to
Count I.

II. **Count IV: Civil Conspiracy**

The court construes Count IV of Censabella's complaint to
allege conspiracy under New Hampshire common law.  In New
Hampshire, a civil conspiracy is "a combination of two or more
persons by concerted action to accomplish an unlawful purpose,
or to accomplish some purpose not in itself unlawful by unlawful

8

means." Sykes v. RBS Citizens, N.A., 2 F. Supp. 3d 128, 138 (D.N.H. 2014) (internal quotation marks omitted) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987)).  A claim for civil conspiracy has the following elements: "(1) two or more persons (including corporations); (2) an object to be accomplished (i.e. an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."  Id. (internal quotation marks omitted) (quoting Jay Edwards, 130 N.H. at 47).

Censabella's general allegations against Montplaisir fail to sustain a claim against him for civil conspiracy for the reasons stated in the court's order on Savaria's motion to dismiss.  See Sept. 6, 2017 Order (doc. no. 31) at *10.  None of Censabella's specific allegations against Montplaisir mentioned above resurrect this claim, as they do not support a plausible inference that Montplaisir entered into an agreement with anyone else on some "object to be accomplished" with respect to Censabella.  Simply put, Censabella's civil conspiracy claim against Montplaisir is based on nothing more than conclusory statements and innuendo.  This is not enough to survive a Rule 12(b)(6) motion, and Count IV must accordingly be dismissed as to Montplaisir.

## III. <u>Count V: Intentional Infliction of Emotional Distress</u>

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege that a defendant "by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another." <u>Tessier v. Rockefeller</u>, 162 N.H. 324, 341 (2011) (citation omitted). "In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." <u>Id.</u> (citation omitted). "Rather, liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> (brackets, quotation marks, and citation omitted).

Censabella alleges that Montplaisir told a Police Explorer that Censabella was "a shitty cop who did not know what she was doing." Censabella further alleges that while reading Carney's lawsuit aloud in front of Censabella, Montplaisir "glared" at Censabella and told her that "Carney is a piece of shit and anyone who talks to him is a piece of shit." Whether these allegations are sufficient to sustain an IIED claim is a close issue, and the court is not unpersuaded by Montplaisir's

contention that they fail to rise to the level of extreme and outrageous conduct necessary to support recovery on an IIED theory.  The court nevertheless declines to dismiss this claim now, concluding that that Censabella has minimally pleaded IIED against Montplaisir such that this claim may proceed. Montplaisir's motion is accordingly denied as to Count V.

**IV.   Count VI: Negligent Infliction of Emotional Distress**

Censabella concedes that she has not stated a claim for negligent infliction of emotional distress.  Montplaisir's motion is accordingly granted as to Censabella's negligent infliction of emotional distress claim for the reasons stated in the order on Savaria's motion to dismiss.  See Sept. 6, 2017 Order (doc. no. 31) at *11-12.

**V.   Count VIII: Due Process and Freedom of Speech**

Censabella alleges claims under 42 U.S.C. § 1983 for violations of substantive due process, procedural due process, and freedom of speech.  The court considers each in turn.

A.    Substantive Due Process

"In order to assert a viable substantive due process claim, a plaintiff has to prove that [she] suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience."  Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 145 (1st Cir. 2016) (citation and quotation

marks omitted). "The burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." J.R. v. Gloria, 593 F.3d 73, 80 (1st Cir. 2010) (brackets, quotation marks, and citation omitted).

Censabella's substantive due process claim is based solely on allegations of verbal harassment by Montplaisir. Though the First Circuit has left open the possibility that "verbal harassment and intimidation might, under appropriate circumstances, be found to violate due process," Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 624 (1st Cir. 2000), Censabella has failed to cite, and the court cannot identify, any case in which a substantive due process claim was allowed to proceed on allegations similar to those against Montplaisir in this case. Indeed, the First Circuit has declined to find such a violation when presented with facts far more egregious than those alleged here. See id. (finding no substantive due process violation when an off duty police officer refused for months to vacate a residence owned by the plaintiffs, threatened and harassed the plaintiffs, destroyed the plaintiffs' property, and physically pushed the plaintiffs' pregnant daughter, causing her to miscarry). Absent any authority to the contrary, the court is

12

compelled conclude that Censabella has failed to state a viable

substantive due process claim against Montplaisir.[5]

     B.    <u>Procedural Due Process and Freedom of Speech</u>

Censabella's procedural due process and freedom of speech

claims against Montplaisir are virtually identical to the claims

she brought against Savaria, and none of the Censabella's

additional allegations against Montplaisir alter the court's

analysis of these claims in its order on Savaria's motion to

dismiss.  Both of these claims therefore fail for the reasons

stated in that order.  <u>See</u> Sept. 6, 2017 Order (doc. no. 31) at

*13–15.

## VI.  <u>Count IX: Civil Rights Conspiracy</u>

A civil rights conspiracy is a "combination of two or more

persons acting in concert to commit an unlawful act, or to

commit a lawful act by unlawful means . . . ." <u>Earle v. Benoit</u>,

<u>850 F.2d 836, 844 (1st Cir. 1988)</u> (citation omitted).  The

principal element of such a conspiracy "is an agreement between

the parties to inflict a wrong against or injury upon another,

and an overt act that results in damages."  <u>Id.</u> (internal

---

    [5] The court's denial of Montplaisir's motion with respect to
Censabella's IIED claim does not save Censabella's substantive
due process claim against Montplaisir.  Indeed, there are
multiple examples in this circuit of trial courts dismissing
substantive due process claims while allowing IIED claims to go
forward.  <u>See, e.g.</u>, <u>Thomas v. Town of Salisbury</u>, 134 F. Supp.
3d 633, 648, 652 (D. Mass. 2015); <u>Correia v. Town of Framingham</u>,
969 F. Supp. 2d 89, 96–97, 99–100 (D. Mass. 2013).

quotations omitted) (citation omitted).  To assert a civil

rights conspiracy under § 1983, a plaintiff must prove that

"there has been, besides the agreement, an actual deprivation of

a right secured by the Constitution and laws."  Id. (brackets

omitted) (citation omitted).

Censabella has failed to state a civil rights conspiracy

claim against Montplaisir for largely the same reasons she

failed to state a claim for civil conspiracy against Montplaisir

under New Hampshire common law: namely, that her assertions that

Montplaisir was part of a conspiracy rest on nothing more than

unsupported conclusions.  There is, quite simply, nothing in the

complaint to support a plausible inference that Montplaisir ever

entered into an agreement with anyone else to inflict some wrong

against Censabella.  Censabella has therefore failed adequately

allege a civil rights conspiracy against Montplaisir under §

1983.

## VII. Count X: RSA § 354-A

Montplaisir raises two arguments as to why the court should

dismiss Censabella's RSA § 354-A claim.  First, he argues that

Censabella failed to exhaust her administrative remedies because

she did not name Montplaisir as an individual respondent in her

NHCHR charge of discrimination.  This argument is identical to

the argument raised by Savaria in her motion to dismiss, and the

court rejects it for the reasons stated in the order on that

motion.  See Sept. 6, 2017 Order (doc. no. 31) at *16–18.

Alternatively, Montplaisir contends that Censabella has failed

to state a claim against him under RSA § 354-A.  This argument,

which comprises just one paragraph and is summary in nature, is

insufficiently developed to warrant dismissal at this time.

Montplaisir's motion is therefore denied as to Count X.[6]


## Conclusion

        For the foregoing reasons, Montplaisir's motion to dismiss

(doc. no. 13) is granted as to Counts I, IV, VI, VIII, and IX,

but denied as to Count V and X.

        SO ORDERED.



                                    _____
                                    Andrea K. Johnstone
                                    United States Magistrate Judge


September 7, 2017

cc:   Wendy L. Spillane, Esq.
      Tony F. Soltani, Esq.
      Daniel P. Schwarz, Esq.
      Brian J. S. Cullen, Esq.

---

        [6] In light of this determination, the court need not
consider whether certain documents attached to Censabella's
objection may be properly considered in the context of a Rule
12(b)(6) analysis.  See doc. nos. 18-1, 18-2, 18-3, 18-4, 18-5,
18-6, 18-7, 18-8, 18-9, and 18-10.